JACKSON, Appellant,

v.

McDONALD, Appellee.

[Cite as *Jackson v. McDonald* (2001), 144 Ohio App.3d 301.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2000CA00363.

Decided June 18, 2001.

*Jeffrey Jakmides,* for appellant.

*Craig T. Conley* and *Howard T. Lane,* for appellee.

GWIN, Presiding Judge.

Appellant Laura Jackson appeals a summary judgment of the Stark County Common Pleas Court dismissing her claim for defamation and intentional inflic-

tion of emotional distress against appellee Robert McDonald and presents two assignments of error:

"I. The trial court erred in finding the defendant immune from plaintiff's claims pursuant to [R.C. Chapter] 2744.

"II. The trial court erred in finding there was no genuine issue of material fact regarding whether the defendant acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

On May 2, 2000, appellant filed a compliant against appellee alleging defamation and intentional infliction of emotional distress. Appellant, an investigator with the Stark County Child Support Enforcement Agency ("CSEA") alleged that appellee authored and delivered an intra-office e-mail to all supervisors and account clerks within the CSEA. Appellant alleges the content of the e-mail was defamatory and was intended to cause her severe emotional distress.

Appellee was the subject of three Canton Repository Newspaper articles that appeared on December 2, 1999, December 17, 1999, and December 31, 1999. The articles generated negative publicity for the CSEA and, in particular, for appellee. The first article detailed the problems citizens experienced in receiving monthly child support payments. Appellee is quoted as explaining that a recent computer systems conversion had created the delays. In the second article, appellee explained that a postal system backlog and the computer system conversion caused the delay. In the third article, the newspaper reported continued problems in processing child support payments. Again, appellee was quoted as referring to the postal system backlog and computer systems conversion as reasons for the delay.

Appellant was interviewed for the third article and disagreed with appellee regarding the cause of the delays. She stated:

"Its not really a computer, it's a work problem. Actually, to be honest with you, there's no reason for them to be behind. No one's getting their payments, and no one seems to know why. I'm tired of it."

Apparently upset with appellant's comment to the newspaper, appellee authored and delivered the e-mail in question to the appellant's thirty-five co-workers of appellant on January 2, 2000. The e-mail states:

"From: Ronald McDonald

"To: csea2

"Date: [Monday, January 3, 2000] 1:58 PM

"Subject: Repository Article*Laura Jackson

"This e-mail is for all supervisors and should be forwarded to all Account Clerks, Jane Taylor, Shannon Ferguson and anyone else who has been especially * * * helpful during the last month-and-a-half. First, I want to thank all of the Account Clerks for their roles in processing, answering phones (special thanks to Debbie Stewart), and in assisting in any way to support the effort to get monies out correctly to the obligees. Special thanks goes to Jane Taylor, Mary Kolopus, and Shannon Ferguson who have voluntarily stayed or returned to Fiscal to help. I want all Account Clerks but especially the processors to know that *unlike your ignorant colleague, Laura Jackson,* I do know how hard you have voluntarily worked overtime and gone beyond to deal with SETS conversion and the tremendous volume of mail received during the holidays. I also know that the phone burden has been heaped on Sandy's workers to help the situation. I really do appreciate your efforts. Now that the holidays are over, we need to continue to work to get the processing fully caught-up. Don't let the *attitude of a vindictive, negative, and ignorant individual affect you.* I believe [that] most Investigators (*especially the one's I feel are worth anything*), feel as I do and do appreciate your efforts. I promise that Mr. Krahl, Judy and myself will work on filling the three vacancies for Account Clerks quickly. Thank you again for the effort.

"P.S. For the record see the attached e-mail from Bonnie C. regarding the obligee in the news article." (Emphasis added and attachment not included.)

In his deposition, appellee admitted that he was aware, albeit through third-hand information, that appellant suffered from a long-standing anxiety/panic attack disorder when he sent the e-mail. Appellee testified that he did not think about the effect the e-mail would have on appellant.

On October 10, 2000, appellee filed a motion for summary judgment. In the motion, appellee argued that he was immune from liability pursuant to R.C. Chapter 2744 and that he was entitled to judgment as a matter of law on appellant's claims of defamation and intentional infliction of emotional distress. Appellee also argued that the e-mail was a constitutionally protected expression of opinion and, therefore, not defamatory. Further, appellee contended that his statements were protected by a qualified privilege. Finally, appellee argued that appellant could not prove extreme and outrageous conduct or that she suffered serious mental anguish and, therefore, her claim for intentional infliction of emotional distress could not be sustained.

On October 25, 2000, appellant filed her response to the motion for summary judgment, attaching her affidavit and the affidavit of her treating physician, Paul Bartos, M.D.

In her affidavit, appellant stated that she had been under Dr. Bartos's care since 1985 for a persistent anxiety/panic disorder. She noted that the disorder

requires that she have a seat by a window. At some point in the past, appellee directed that appellant be moved away from the window. After involvement by the Ohio Civil Rights Commission, a settlement was negotiated with appellee, which ultimately resulted in appellant's being returned to her place by the window to accommodate her disorder. Based upon those facts, appellant maintained that appellee had personal knowledge of her disorder. Appellant also stated that she was shocked, deeply humiliated, and embarrassed upon learning that appellee had sent copies of the e-mail to various co-workers. As a result, appellant sought treatment from Dr. Bartos.

The affidavit of Dr. Bartos states that appellant was under treatment for an anxiety/panic disorder when she contacted him with regard to the e-mail in question. In Dr. Bartos's opinion, appellant suffered severe emotional distress as a direct result of the distribution of the offensive e-mail. Dr. Bartos advised appellant to take time off from work and modified her treatment accordingly.

In a November 13, 2000 judgment entry, the trial court granted appellee's motion for summary judgment, finding that no genuine issue of material fact existed and that appellee was entitled to judgment as a matter of law. Specifically, the trial court found that appellee was immune from liability pursuant to R.C. 2744.03(A)(6). The trial court further found that no genuine issue of material fact existed regarding whether appellee acted with a malicious purpose, in bad faith, or in a wanton or reckless manner in sending the offending e-mail. Because the trial court found no evidence to indicate that appellee acted with such purpose, it found appellee to be immune under the statute.

## I

In appellant's first assignment of error, she maintains that the trial court erred in finding that appellee was immune from liability pursuant to R.C. Chapter 2744. While not explicitly stated, appellant's argument appears to be that appellee acted outside the course and scope of his employment in writing and sending the offending e-mail, and, therefore, the immunity provided by R.C. Chapter 2744 does not apply. We disagree.

We agree with the trial court, as does appellant, impliedly, that the operation of the CSEA is a governmental function. Rather, the issue is whether appellee's conduct arose within the course and scope of his employment as the director of the CSEA. Appellant contends that appellee's behavior did not arise within the scope of his employment. We disagree.

In the context of immunity, "[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment." *Elliott v. Ohio Dept. of Rehab.*

*& Corr.* (1994), 92 Ohio App.3d 772, 775, 637 N.E.2d 106, 108. "It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment." *James H. v. Dept. of Mental Health & Mental Retardation* (1980), 1 Ohio App.3d 60, 61, 1 OBR 6, 8, 439 N.E.2d 437, 439. "The act must be so divergent that it severs the employer-employee relationship." *Elliott,* 92 Ohio App.3d at 775, 637 N.E.2d at 108. "Conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business." *Martin v. Cent. Ohio Transit Auth.* (1990), 70 Ohio App.3d 83, 92, 590 N.E.2d 411, 417.

Upon review of the e-mail as a whole, and applying the above-referenced definitions, we find that the e-mail was within the scope of appellee's employment. Because R.C. 2744.01(C)(2)(m) defines the "operation of a human services department or agency" to be a "governmental function," and because we find appellee's conduct to be within the scope of his employment, we find the potential protections afforded by R.C. Chapter 2744 to be available to appellee herein.

Appellant's first assignment of error is overruled.

## II

In appellant's second assignment of error, she maintains that the trial court erred in finding that no genuine issue of material fact existed regarding whether appellee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as did the trial court. See *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 79, 506 N.E.2d 212, 215. Civ.R. 56(C) states:

"Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

Pursuant to the above rule, a trial court may not enter a summary judgment if it appears that a material fact is genuinely disputed. The party

moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, 1171, quoting *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

■ R.C. 2744.03(A)(6) is the relevant statute when dealing with immunity for political subdivision employees. It provides:

"(A) In a civil action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

"* * *

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or section 3746.24 [providing immunity in situations involving voluntary cleanup of contaminated property] of the Revised Code, the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code."

■ "R.C. 2744.03(A)(6) operates as a presumption of immunity." *Lutz v. Hocking Technical College* (May 18, 1999), Athens App. No. 98CA12, unreported, 1999 WL 355187, at *5, citing *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 90, 658 N.E.2d 814, 820–821. It is a qualified immunity, in the sense that it will attach so long as one of the exceptions does not apply. *Lutz* at *5. To defeat summary judgment in favor of appellee, appellant was required to present evidence tending to show a material issue of fact as to one of the exceptions to qualified immunity, *e.g.*, appellee's act was beyond the scope of employment or

was performed with malicious purpose, in bad faith, or in a wanton or reckless manner.

In its November 13, 2000 judgment entry, the trial court found no genuine issue of material fact existed with regard to whether appellee acted with malicious purpose, in bad faith, or in a wanton and reckless manner.

"Wanton misconduct" has been defined as a failure to exercise any care whatsoever. *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. In *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97, 55 O.O.2d 165, 166, 269 N.E.2d 420, 422, the Ohio Supreme Court stated that "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tort-feasor." The perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. *Id.* at 97, 55 O.O.2d at 166, 269 N.E.2d at 423. To act in reckless disregard of the safety of others, the conduct must be of such risk that it is substantially greater than that which is necessary to make the conduct negligent. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104, 559 N.E.2d 705, 708.

"Bad faith" has been defined as a "'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 454, 602 N.E.2d 363, 367, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus. "Malice" has been defined as "willful and intentional design to do injury." *Id.,* 76 Ohio App.3d at 453–454, 602 N.E.2d at 367.

The trial court did not err in finding no disputed facts as to whether appellee acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellant relies on appellee's deposition testimony, wherein he admitted that he knew that appellant suffered from anxiety difficulties before he sent the e-mail in question. She further relies on his testimony that he did not think about the effect the e-mail would have on her. However, this testimony demonstrates, at best, indifference to the effect of his actions, and does not rise to the level of a conscious disregard of the fact that his conduct would in all probability result in injury. Appellee's e-mail use of the words "vindictive," "negative," and "ignorant" does not facially rise to the level of wanton and willful misconduct, nor are they the type of words that a person would reasonably expect to cause injury to another person.

The second assignment of error is overruled.

The judgment of the Stark County Common Pleas Court is affirmed.

*Judgment affirmed.*

FARMER, J., concurs.

WILLIAM B. HOFFMAN, J., concurs in part and dissents in part.

WILLIAM B. HOFFMAN, Judge, concurring in part and dissenting in part.

I concur in the majority's analysis and disposition of appellant's first assignment of error. However, I respectfully dissent from the majority's disposition of appellant's second assignment of error.

Unlike the majority, when considering the evidence in a light most favorable to appellant, as required by Civ.R. 56, I believe reasonable minds could differ whether appellee acted in a malicious, wanton, or reckless manner and, if so found, whether such conduct proximately caused injury to appellant. Appellee has maintained that the purpose of the e-mail was to support, motivate, and boost the morale of employees at the CSEA. However, placing appellant's name on the subject line of the e-mail was not necessary to accomplish that purpose.

There is evidence of record to indicate that appellee was aware that appellant suffered from an anxiety disorder. Appellant's affidavit avers that appellee participated in an Ohio Civil Rights Commission case dealing with her anxiety disorder. Additionally, appellee admitted that he knew that appellant suffered from anxiety-type situations, and he was aware of this condition before he sent the offending e-mail. Notwithstanding this knowledge, appellee testified that he did not think about the effect the e-mail would have on appellant.

I would reverse the judgment of the trial court and remand this cause to the trial court for further proceedings.