OPINION *Page 2 
{¶ 1} Defendants-appellants Jackson Local School District Board of Education, William "Gus" Dieringer, Lili Genetin and Gary Villard, appeal the June 22, 2006, judgment entry of the Stark County Court of Common Pleas that denied their motion for summary judgment. Plaintiffs-appellees are Jane Doe, Mother of Jane Doe, Minor, and Jane Doe, Minor.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellee Jane Doe, Minor, is a special education student who lives in the Jackson Local School District. Pursuant to her Individual Education Program, she receives her education at Beechgrove Elementary School in the Tuslaw Local School District. Appellant Jackson Local School District Board of Education ("Jackson Local") provides Jane Doe, Minor, transportation to and from her home in Jackson Township to Beechgrove Elementary School.
 {¶ 3} During the 2003-2004 and 2004-2005 school years, appellee Jane Doe, Minor, was transported by appellant Jackson Local by a school mini-van. Appellant Diereinger was the supervisor of transportation and food services for appellant Jackson Local. Appellants Genetin and Villard were drivers. Appellee Jane Doe, Minor, rode in the mini-van with other special education students who were also being transported to the Tuslaw Local School District. The other students on the mini-van were older students who were being transported to Tuslaw High School. The mini-van consisted of two front bucket seats and two bench seats, one in the middle and one in the back of the van. One student would sit in the bucket seat next to the driver, two students would sit in the middle bench seat, and two students would sit in the back *Page 3 
bench seat. There were no assigned seats on the min-van. However, the van drivers would not seat younger students in the front passenger seat due to air-bag safety concerns. In addition, the van drivers would seat younger students in between older students in order to prevent fighting among the older students.
 {¶ 4} Appellee Jane Doe, Minor, an elementary school student, routinely sat in the back bench seat next to Justin Abney, a high school student with a lengthy history of discipline problems at both school and home. Appellees' complaint alleges that Abney sexually assaulted Jane Doe, Minor, two to three times per week for approximately one and one-half years while riding in the mini-van to and from school. Abney's sexual assaults included digital vaginal penetration, forcing appellee Jane Doe, Minor, to stroke his penis, and attempted intercourse. Abney withdrew from school in October of 2004, thus ending the sexual assaults. Other students reported the assaults to appellant Jackson Local in November of 2004.
 {¶ 5} Appellees filed their complaint on June 24, 2005, against appellants alleging that appellants are liable for the sexual assaults perpetrated against appellee Jane Doe, Minor.[1] Appellants filed a motion for summary judgment on April 28, 2006. Appellees filed a brief in opposition to appellants' motion for summary judgment on May 12, 2006, and appellants filed a reply brief on May 19, 2006. On June 22, 2006, the trial court issued a judgment entry in which it denied appellants' motion for summary judgment. Appellants appeal the denial of summary judgment based upon R.C. 2744.02(C), which provides that "an order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as *Page 4 
provided in this chapter or any other provision of the law is a final order". Appellants set forth the following assignments of error.
 {¶ 6} "I. THE TRIAL COURT ERRED, AS A MATTER OF LAW, TO THE PREJUDICE OF THE JACKSON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION IN NOT DISMISSING ALL CLAIMS AGAINST IT ON THE GROUNDS OF OHIO REVISED CODE CHAPTER 2744, IMMUNITY.
 {¶ 7} "II. THE TRIAL COURT ERRED, AS A MATTER OF LAW, TO THE PREJUDICE OF THE [SIC] GUS DIERINGER, LILI GENETIN, AND GARY VILLARD IN NOT DISMISSING ALL CLAIMS AGAINST THEM ON THE GROUNDS OF OHIO REVISED CODE CHAPTER 2744, IMMUNITY."
 {¶ 8} This matter reaches us upon a denial of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36,506 N.E.2d 212. As such we must refer to Civ.R. 56(C), which provides in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for *Page 5 
summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 9} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. Further, trial courts should award summary judgment with caution. "Doubts must be resolved in favor of the non-moving party." Murphy v. Reynoldsburg,65 Ohio St.3d 356, 359, 1992-Ohio-95, 604 N.E.2d 138. It is pursuant to this standard that we review appellants' assignment of error.
 I {¶ 10} Appellants argue in their first assignment of error that the trial court erred in denying the motion for summary judgment as to appellant Jackson Local. We agree.
 {¶ 11} At issue in the case sub judice is whether appellant Jackson Local is entitled to statutory immunity under R.C. Chapter 2744. The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. Cater v. City ofCleveland, 83 Ohio St.3d 24, 28, 1998-Ohio-421, 697 N.E.2d 610.
 {¶ 12} The first tier of the analysis involves the application of R .C. 2744.02(A)(1), which states in pertinent part: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." The parties do not dispute that appellant *Page 6 
Jackson Local is a political subdivision. Further, the transportation of school children is a governmental function for purposes of analysis under R.C. 2744. See, Day v. Middletown-Monroe City School District
(July 17, 2000), Butler App. No. CA-99-186, 2000 WL 979141 at 4-5.
 {¶ 13} However, the immunity afforded by R.C. 2744.02(A)(1) to a political subdivision such as appellant Jackson Local is not absolute, but is, by its express terms, subject to five exceptions as set forth in R.C. 2744.02(B). See, Hill v. Urbana, 79 Ohio St.3d 130, 1997-Ohio-400,679 N.E.2d 1109. Thus, the second tier of the immunity analysis involves the application of R.C. 2744.02(B), which states in pertinent part as follows:
 {¶ 14} "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 {¶ 15} "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. . . ."
 {¶ 16} The third tier of the immunity analysis involves reinstatement of the immunity if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies. Cater, supra, at 28. *Page 7 
 {¶ 17} As noted by the court in Doe v. Dayton, (1999),137 Ohio App.3d 166, 738 N.E.2d 390: "The General Assembly's enactment of R.C.2744.02(A)(1) reflects a policy choice on the part of the state of Ohio to extend to its political subdivisions the full benefits of sovereign immunity from tort claims. Likewise, the exceptions to immunity in R.C.2744.02(B) and the exceptions and defenses in R.C. 2744.03 reflect policy choices on the state's part to submit itself to judicial relief on tort claims only with respect to the particular circumstances identified therein. Because those exceptions and defenses are in derogation of a general grant of immunity, they must be construed narrowly if the balances which have been struck by the state's policy choices are to be maintained." Id. at 169.
 {¶ 18} Appellees argue that the trial court correctly denied appellants' motion for summary judgment with respect to appellant Jackson Local because the supervision and control of student passengers during transport is an integral part of the operation of the school bus or van. According to appellees, drivers Genetin and Villard were negligent in their supervision and control of the student passengers; ergo they were negligent in their operation of the bus. Appellants argue, however, that the supervision and control of student passengers falls outside the scope of "operation of a motor vehicle" as that term is used in R.C. 2744.02(B)(1).
 {¶ 19} Appellees cite the case of Groves v. Dayton Public Schools, etal. (1999), 132 Ohio App.3d 566, 725 N.E.2d 734, for the proposition that the term "operation of a motor vehicle" encompasses more than the mere act of driving the vehicle. In Groves, the school district's bus driver negligently assisted a disabled, wheelchair bound student disembark from the school bus. The driver failed to properly *Page 8 
secure the child before disembarking and the student suffered injuries when her hand became wedged in the wheel of her wheelchair. TheGroves court stated:
 {¶ 20} "R.C. Chapter 2744 contains no definition of the term `operation of any motor vehicle.' We find the term capable of encompassing more than the mere act of driving the vehicle involved. Neither of the parties to this appeal refers us to any authority construing the term in question with regard to a driver's assisting a disabled passenger and our research in Ohio law has failed to reveal any cases on point. . . .
 {¶ 21} "Here, Groves was a passenger on a school bus equipped to transport children confined to wheelchairs, which suggests to us that it was equipped with a ramp with which to lift and lower the students in their wheelchairs as they boarded and disembarked from the bus. In addition, Dayton Public Schools had established rules and regulations pertaining to the safe boarding, transportation, and disembarking of handicapped students that required bus drivers to, inter alia, secure passengers in their wheelchairs when assisting them on or off the school bus. Thus, it can reasonably be inferred that doing so was part of the bus driver's duties and an integral part of his operation of the school bus. Furthermore, we do not exclude the possibility that the driver's operation of the ramp itself would be considered operation of the motor vehicle under the circumstances of this case." Id. at 569-570.
 {¶ 22} Whether or not we agree that the operation of a motor vehicle entails more than simply the act of driving, we find the Groves case to be distinguishable from the case sub judice. In Groves, the bus driver was assisting the disabled student to disembark from the bus. Thus, according to Groves, the affirmative act of stopping the bus and assisting the student to disembark from the bus fell within *Page 9 
the definition of "operation of the motor vehicle" for purposes of the tort immunity exception. The Groves court relied on California and Michigan case law for the proposition that the bus driver's stopping of a school bus for the purposes of discharging passengers along with the bus driver's duties attendant to the stopping of the bus unquestionably constitutes operation of a motor vehicle. Id.
 {¶ 23} The case sub judice is, however, distinguishable from theGroves case. In the within case, the allegedly negligent act involved supervision of the children while passengers on the mini-van. This act is distinctly different from the act of assisting students in getting on and off a bus. While the Ohio Administrative Code (OAC) does provide for pupil transportation management policies and school bus driver training requirements at OAC §§ 3301-83-08 and 3301-83-10, nowhere does the OAC state that pupil management is part of the operation of the motor vehicle. While pupil management or supervision of students who are passengers on a bus or mini-van may very well be part of the driver's responsibility, it is a responsibility that is separate and distinct from that of the operation of the motor vehicle. We therefore hold that the allegedly negligent actions of the drivers in supervising the students herein does not fall within the definition of "operation of a motor vehicle" for purposes of the tort immunity exception.
 {¶ 24} Our holding is supported by the policies underlying R.C. 2744. As set forth by the Ohio Supreme Court in Wilson v. Stark CountyDepartment of Human Services, 70 Ohio St.3d 450, 1994-Ohio-394,639 N.E.2d 105, ". . . R.C. Chapter 2744 was the General Assembly's response to the judicial abrogation of common-law sovereign immunity. Franks v.Lopez (1994), 69 Ohio St.3d 345, 347, 632 N.E.2d 502, *Page 10 
504. The manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions.Menefee v. Queen City Metro (1990), 49 Ohio St.3d 27, 550 N.E.2d 181." Id. at 453.[2]
 {¶ 25} Because we find that none of the exceptions to immunity set forth in R.C. 2744.02(B) apply, we need not address whether any of the defenses contained in R.C. 2744.03 applies.
 {¶ 26} Appellees also challenge the constitutionality of the sovereign immunity statute.[3] This argument is not well taken, as appellees failed to comply with the procedures set forth by R.C. 2721.12 necessary to attack the constitutionality of a statute. Appellees did not assert that R.C. 2744 was unconstitutional in their complaint or their amended complaints. Even if these procedural requirements had been met, the appellees' constitutional argument would still fail. As set forth by this Court in Eischen v. Stark County Board of Commissioners, Stark App. No. 2002CA00090, 2002-Ohio-7005, appeal not allowed by98 Ohio St. 3d 1539, 2003-Ohio-1946, 786 N.E.2d 901: "[d]espite the provocative language used by Justice Douglas in Butler [v. Jordan,92 Ohio St.3d 354], the law of Ohio remains that R.C. Chapter 2744 is constitutional. The Supreme Court of Ohio addressed this issue in Fabrey v. McDonaldPolice Department, 70 Ohio St.3d 351, 639 N.E.2d 31, 1994-Ohio-368, andFahnbulleh v. Straham, 73 Ohio St.3d 666, 653 N.E.2d 1186,1995-Ohio-295." Eischen at paragraph 20.
 {¶ 27} Appellants' first assignment of error is sustained. *Page 11 
 II {¶ 28} Appellants, in their second assignment of error, argue that the trial court erred in denying their motion for summary judgment as to appellants Dieringer, Genetin and Villard. We agree.
 {¶ 29} R.C. 2744.03(A)(6) states in pertinent part:
 {¶ 30} "In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 31} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 32} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 33} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee."
 {¶ 34} Appellees do not dispute that appellants Dieringer, Genetin and Villard were within the scope of their employment when the alleged wrongful actions in this case occurred. The allegedly wrongful actions of appellant Dieringer took place *Page 12 
while he supervised the transport of children. The allegedly wrongful actions of appellants Genetin and Villard took place while they transported the children. Therefore, their actions or omissions were not outside the scope of their employment or official responsibilities. As such, R.C. 2744.03(A)(6)(a) is inapplicable.
 {¶ 35} Rather, appellees argue that there is a genuine issue of material fact as to whether said appellants' acts and/or omissions were with wanton or reckless disregard. In turn, appellants Dieringer, Genetin and Villard argue that they are immune from liability because there has been no showing that their acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner. See R.C. 2744.03(A)(6)(b). We agree.
 {¶ 36} This Court addressed the issues of malice, bad faith, and wanton or reckless conduct in the sovereign immunity context in the case of Henney v. Shelby City School District, Richland App. No. 2005 CA 0064, 2006-Ohio-1382, appeal not allowed by 110 Ohio St.3d 1443,2006-Ohio-3862, 852 N.E.2d 190: "`Malicious purpose' has been defined as the `willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through . . . unlawful or unjustified' conduct. Cook v. Hubbard Exempted Village Bd. of Edn.
(1996), 116 Ohio App.3d 564, 569, 688 N.E.2d 1058. `Bad faith' imports more than mere bad judgment or negligence. Id. It connotes a `dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' Jackson v. McDonald (2001), 144 Ohio App.3d 301, 309,760 N.E.2d 24.
 {¶ 37} "`Wanton' conduct is the complete failure to exercise any care whatsoever. Fabrey v. McDonald Village Police Dept. (1994),70 Ohio St.3d 351, 356, *Page 13 639 N.E.2d 31. However, mere negligence will not be construed as wanton misconduct in the absence of evidence establishing `a disposition of perversity on the part of the tortfeasor', the actor must be aware that his conduct will probably result in injury. Id. (quoting Roszman v.Sammett (1971), 26 Ohio St.2d 94, 97, 269 N.E.2d 420). One acts recklessly `if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' Jackson v. Butler Cty. Bd. ofCty. Commrs. (1991), 76 Ohio App.3d 448 454, 602 N.E.2d 363 (quotingThompson v. McNeill (1990), 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705.
 {¶ 38} "Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury. Fabrey, supra, at 356, 639 N.E.2d 31. However, summary judgment is appropriate in instances where the alleged tortfeasor's actions show `that he did not intend to cause any harm . . ., did not breach a known duty through an ulterior motive or ill will, [and] did not have a dishonest purpose. . . . ` Fox v. Daly (Sept. 26, 1997), Trumbull App. No. 96-T-5453 [1997 WL 663670], (quoting Hackathom v. Preisse (1995), 104 Ohio App.3d 768, 772,663 N.E.2d 384)." Henney at paragraphs 48-50.
 {¶ 39} In this case, we find that the conduct of appellants Dieringer, Genetin and Villard was, at most, negligent. There is no evidence in the record that indicates appellants were aware of the misconduct of Justin Abney. Although neither of the drivers could see the back bench seat during transport, there has been no showing *Page 14 
that the conduct of said appellants was done with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 40} Finally, appellees do not dispute that civil liability is not imposed upon said appellants by a section of the Revised Code.
 {¶ 41} Upon review, we conclude that the trial court erred in denying summary judgment as to appellants Dieringer, Genetin and Villard.
 {¶ 42} Appellants' second assignment of error is, therefore, sustained.
 {¶ 43} Based upon the foregoing, the judgment of the trial court is reversed and this matter is remanded to the trial court.
 Edwards, J. Wise, P.J. and Farmer, J. concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded to the trial court. Costs assessed to appellees.
[1] Appellees filed a first amended complaint on October 13, 2005, and a second amended complaint on April 5, 2006.
[2] The negligent operation of a motor vehicle exception to the sovereign immunity statute is in conformity with this underlying policy, as a political subdivision may purchase motor vehicle liability insurance.
[3] The trial court did not address the constitutionality issue in its June 22, 2006, judgment entry. *Page 1