OPINION *Page 2 
Governmental immunity-R.C.2744.03-Attorney/Client Privilege
 {¶ 1} On November 9, 2007, the Stark County Court of Common Pleas overruled the Motion of Defendants for Summary Judgment. Pursuant to the interlocutory appeal provisions of R.C. 2744.02, on January 16, 2008, the Defendants appealed, assigning five errors:
 {¶ 2} "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANTS THE BENEFIT OF AN IMMUNITY UNDER R.C. § 2744.03(A)(6)(b) BY CONCLUDING THAT APPELLEE PRESENTED A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER APPELLANTS ACTED WITH A MALICIOUS PURPOSE, IN BAD FAITH, OR IN A WANTON OR RECKLESS MANNER.
 {¶ 3} "II. THE TRIAL COURT ERRED WHEN IT RELIED UPON INADMISSABLE COMMUNICATIONS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE TO FIND THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT
 {¶ 4} "III. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANTS' MOTION FOR SUMMARY JUDGMENT ON APPELLEE'S DEFAMATION CLAIM.
 {¶ 5} "IV. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANTS' MOTION FOR SUMMARY JUDGMENT ON APPELLEE'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
 {¶ 6} "V. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANTS' MOTION FOR SUMMARY JUDGMENT ON APPELLEE'S CIVIL CONSPIRACY CLAIM."
 {¶ 7} We affirm the Judgment of the Stark County Court of Common Pleas. *Page 3 
Motion To Dismiss Assignments of Error 2,3,4 and 5
 Motion to Dismiss Assignments of Error 2, 3, 4, and 5 {¶ 8} Appellee filed a Motion to Dismiss and Strike Assignments of Error 2,3,4, and 5, "because this honorable court lacks jurisdiction to hear an interlocutory appeal of those matters."
 {¶ 9} The motion and responses focus upon the convoluted nature of the exception to the usual rule that an appellate court has no subject matter jurisdiction over an appeal until the trial court has finished its work — and had opportunity to correct any legal flaws in the process leading to final, trial court judgment.
 {¶ 10} One only need review the pleading and procedural history of Ohio's Rules of Civil Procedure to understand the basic plan for resolving legal disputes in a fair and impartial manner, and the extent to which the legislated issues here confronted stand in conflict with such history. Hubbell v. Xenia, 115 Ohio St.3d 77, 2007-Ohio-4839, in the majority and dissenting opinions articulate the inversion of process created by R.C. 2744.02.
 {¶ 11} For purposes of this appeal Riggs concedes that Hubbell is controlling law in Ohio, and the First Assignment of Error does invest this appellate court with jurisdiction. He argues that the balance of assignments of error do not address the issue of political immunity and this appellate court has no jurisdiction to determine them. The gist of his argument is that the jurisdictional window of appeal of an interlocutory order denying summary judgment applies only to the narrow, limited issue of political immunity, and the other issues are not appropriately the subject of such an appeal. He *Page 4 
relies on Nagel v. Horner, 162 Ohio App.3d 221, 2005-Ohio-3574, decided before Hubbell.
 {¶ 12} Appellants counter that the implications of Hubbell necessarily include all of the ingredients that went into the trial court's ruling denying summary judgment. They rely on Tudor v. Cincinnati (1998),130 Ohio App.3d 805, 721 N.E.2d 444, and a series of other cited cases, all of which were decided before Hubbell.
 {¶ 13} Because the unique interlocutory appeal provisions of R.C. 2744.02(C) are narrowly focused we conclude the issues raised within Assignments of Error 2,3,4, and 5 are subsumed by the First Assignment of Error.
 {¶ 14} The Motion to Dismiss Assignments of Error 2,3,4 and 5 is sustained
 Assignments of Error I — Denial of Immunity by Overruling of Summary Judgment Motion {¶ 15} When a court of appeals entertains an appeal from Summary Judgment in the trial court its review is de novo, i.e. we adjudicate the merits of the motion independently. This is true whether the appeal is of an overruled summary judgment motion, or the granting thereof.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36,506 N.E.2d 212. See Doe v. Jackson Local School Dist., 2007-Ohio-3258, where this court entertained an interlocutory appeal of denial of summary judgment to a school district and reversed the trial court.
 The Prefatory Challenge to the Testimony of Actions of Slick at Board of Education Meeting {¶ 16} Preliminary to our determination of the merits of the Motion for Summary Judgment, and the determination of whether there are genuine issues of material fact, it *Page 5 
is necessary to examine the Civ. R. 56 supplications involving alleged privileged attorney-client communications. We address this question first.
 {¶ 17} It is clear the trial court included in its analysis of the evidence the testimony of a member of the Board of Education, Laura Mottice.
 {¶ 18} It is to this issue that the Ohio School Boards Association addresses its Amicus Curia brief. As to Appellant Slick, they argue she appeared before the board of education as their attorney and is therefore protected by the common law extension of R.C.2317.02 to confidential attorney-client communications. American Motors Corporationv. Huffstutler (1991), 61 Ohio St.3d 343; State ex rel. Leslie v. OhioHousing Finance Agency, 105 Ohio St.3d 261, 2005-Ohio-1508. They counter the challenge that the privilege has been waived by arguing individual members of the board may not waive a privilege that is owned by the entire board. In re Dismissal of Osborn, 1992 WL 214527 (Ohio App. 5 Dist.); Carver v. Deerfield Township (2000), 139 Ohio App.3d 64.
 {¶ 19} Appellee Riggs contests the claim of privilege by arguing that upon the circumstances of this case, the attorney-client privilege relationship does not exist as to the non-lawyer witnesses.
 {¶ 20} In the unique posture of this case — a limited, focused interlocutory appeal of a denial of summary judgment — we conclude the question of privilege is properly left to the discretion of the trial court. It is during the trial of the case that the probing questions of privilege are appropriately addressed. During summary judgment consideration the testimony of a witness as to the existence of a material fact becomes part of the record to which Civil Rule 56 principles apply. Thus, for example, affidavits *Page 6 
are fundamental to the record for purposes of summary judgment consideration, but such testimony may ultimately prove inadmissible for any number of reasons at trial. The same is true here.
 {¶ 21} If the challenged testimony were the only evidence presented in defense of the summary judgment motion (grounded in governmental immunity) the admissibility of the testimony of the member of the board of education could be determinative of the merits of the summary judgment motion. However, in this case, as noted below, there are numerous incidents of acts and omissions, considered together, that support the denial of summary judgment. The claimed attorney-client privileged testimony is probative and cumulative on the question of whether there is a genuine issue of material fact as to malice, bad faith, and/or wanton or reckless conduct. It is not singularly dispositive.
 {¶ 22} It is not insignificant this appellate court has previously confronted the attorney-client privilege issue in this protracted case. See Riggs v. Richard, 5th Dist. No., 2007-Ohio-490. In that case Slick sought reversal of the denial of a protective order vis-à-vis deposition testimony on grounds of attorney-client privilege. We held that it was premature for either the trial court or this court to rule on the availability of the privilege prior to the deposition of the attorney.
 {¶ 23} We conclude the availability of attorney-client privilege is genuinely disputed within the context of Civ. R. 56, and not properly addressed within the limited statutorily authorized interlocutory appeal of denial of summary judgment on sovereign immunity grounds. *Page 7 
 {¶ 24} We leave to the trial court the ultimate issue, in the context of the trial of the case, whether the claimed privileged testimony is admissible.
 {¶ 25} The statutory perimeter within which we independently review the summary judgment motion provides: R.C. 2744.03 Defenses — immunities.
 {¶ 26} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 {¶ 27} "* * *
 {¶ 28} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 29} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 30} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner . . ."
 {¶ 31} Our de novo consideration of the summary judgment motion addresses the following question:
 {¶ 32} Do the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact filed in the Stark County Court of Common Pleas show there is no genuine issue as to any material *Page 8 
fact and that the moving party, Appellants Richard and Slick, are entitled to judgment as a matter of law?
 {¶ 33} "Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court." Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ. R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * "A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only there from, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 34} "Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving *Page 9 
party to set forth specific facts demonstrating there is a genuine issue of material fact for trial." Vahila v. Hall (1997), 77 Ohio St.3d 421,429, 674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264.
 {¶ 35} We will address appellants' assigned errors pursuant to the aforesaid standard of review.
 {¶ 36} In Palmer v. Pheils, 2004-Ohio-6975, this Court addressed the issues of malice, bad faith, and wanton or reckless conduct in the sovereign immunity context in the case of Henney v. Shelby City SchoolDistrict, Richland App. No. 2005 CA 0064, 2006-Ohio-1382, appeal not allowed, 110 Ohio St.3d 1443, 2006-Ohio-3862, 852 N.E.2d 190: "`Malicious purpose' has been defined as the `willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through . . . unlawful or unjustified' conduct. Cook v.Hubbard Exempted Village Bd. of Edn. (1996), 116 Ohio App.3d 564, 569,688 N.E.2d 1058. `Bad faith' imports more than mere bad judgment or negligence. Id. It connotes a `dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' Jackson v.McDonald (2001), 144 Ohio App.3d 301, 309, 760 N.E.2d 24.
 {¶ 37} "`Wanton' conduct is the complete failure to exercise any care whatsoever. Fabrey v. McDonald Village Police Dept. (1994),70 Ohio St.3d 351, 356, 639 N.E.2d 31. However, mere negligence will not be construed as wanton misconduct in the absence of evidence establishing `a disposition of perversity on the part of the tortfeasor', the actor must be aware that his conduct will probably result in injury. Id. (quoting Roszman v. Sammett (1971), 26 Ohio St.2d 94, 97,269 N.E.2d 420). One acts *Page 10 
recklessly `if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' Jackson v. Butler Cty. Bd. ofCty. Commrs. (1991), 76 Ohio App.3d 448 454, 602 N.E.2d 363, (quotingThompson v. McNeill (1990), 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705).
 {¶ 38} "Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury. Fabrey, * * *. However, summary judgment is appropriate in instances where the alleged tortfeasor's actions show `that he did not intend to cause any harm . . ., did not breach a known duty through an ulterior motive or ill will, [and] did not have a dishonest purpose. . . . `Fox v. Daly (Sept. 26, 1997), Trumbull App. No. 96-T-5453 [1997 WL 663670], (quotingHackathorn v. Preisse (1995), 104 Ohio App.3d 768, 772, 663 N.E.2d 384).Henney at paragraphs 48-50." Doe v. Jackson Local School Dist., Stark App. No. 2006CA00212, 2007-Ohio-3258 at para. 38.
 {¶ 39} We have examined the voluminous record in this case consistent with the mandate of Civ. R. 56 with a view to determining whether there exist any "genuine issue as to any material fact" — i.e. whether Appellants Slick and/or Richard acted with malicious purpose, or in bad faith, or in a wanton or reckless manner. R.C. 2744.03(A)(6)(b). In so doing, we are also instructed to view the evidence in a light most favorable to the nonmoving party, Riggs. Civ. R. 56(C). *Page 11 
 {¶ 40} Plaintiff-Appellee, Riggs, was a teacher and wrestling coach in the Perry Local School System. Defendant-Appellants are John V. Richard, the Superintendent of the Perry Local Schools, and Mary Jo Shannon Slick, General Counsel of the Stark County Educational Service Center.
 {¶ 41} The genesis of this litigation is the alleged conduct and acts of the Defendants-Appellants over a period of two months in 2005 toward Plaintiff-Appellee.
 {¶ 42} In his Amended Complaint, Riggs alleges each of the Defendants, acting in their respective roles for the schools, did falsely and illegally state to the Perry Local Board of Education, the administrators at the Stark County Educational Service Center, staff of the Perry Local Schools, residents of Perry Township, news media, and the general public that Plaintiff, Riggs improperly misused funds by writing three checks from the account of the Perry Wrestling Boosters to his stepson after his stepson's employment with the Perry Local Schools had been terminated. (Par. 1) Further, these Defendants conspired to and did utilize misleading documents to support and lend credibility to their false and illegal statements regarding the checks, and presented them to the Board of Education as an attempt to justify their recent investigation of Plaintiff, and to mislead the Board into approving suspension and reprimand of Plaintiff as well as not hiring him as head wrestling coach at Perry High school. (Par. 2)
 {¶ 43} Plaintiff further claims after confrontation at a public meeting Defendant Richard admitted to the public the checks never existed. (Par. 3)
 {¶ 44} Neither Defendant has sought to publicly correct and/or apologize for the statements they published. Since the public disclosure Defendants have "sought to camouflage and excuse their tortuous conduct by publicly and privately defaming Riggs *Page 12 
and making purposefully misleading and grossly distorted allegations to third parties . . . in a desperate effort to manufacture some justification for their persecution of Riggs." (Am. Compl. Par. 4)
 {¶ 45} Plaintiff articulates 4 separate counts: (1) defamation per se, (2) defamation per quod, (3) intentional infliction of emotional distress, and (4) civil conspiracy. (Par. 6, and pgs 13-16)
 {¶ 46} Plaintiff's claims of operative facts consume 9 pages.
 The Answer of John Richard (July 6, 2006) {¶ 47} Richard denies the allegations of the Amended Complaint and asserts affirmative defenses of:
 {¶ 48} (1) Failure to state a claim.
 {¶ 49} (2) Immunities and defenses per R.C. 2744.
 {¶ 50} (3) Privilege
 {¶ 51} (4) Alleged defamatory statements "were not published to third parties."
 {¶ 52} (5) Truth of alleged statements.
 The Answer of Mary Jo Shannon Slick {¶ 53} Slick affirmatively denies the operative allegations of the Amended complaint, and asserts the same defenses as Richard.
 The Trial Court Ruling on Summary Judgment {¶ 54} On November 9, 2007, the trial court overruled the July, 2007 motions of each of defendants for summary judgment. The trial court favored the parties with an 11 page opinion in support of its Judgment. *Page 13 
 {¶ 55} The trial court examined the records filed in the case (a stack of documents approximately three feet in height) and concluded the evidence presents a genuine issue of material fact as to whether Defendants' acts and/or omissions were with wanton or reckless disregard of consequences, i.e. reasonable minds could conclude Defendants acted with malice or in bad faith, or acted in a wanton or reckless manner.
 {¶ 56} In its considered ruling on summary judgment, the trial court clearly focused upon factual issues. The trial court found:
 {¶ 57} "Defendants do not appear to dispute that Richard and Shannon Slick were within the scope of their employment when the alleged wrongful actions in this case occurred. Therefore, their actions or omissions were not outside the scope of their employment or official responsibilities. As such R.C. 2744.03(A)(6)(a) is inapplicable." November 9, 2007 Judgment Entry at 3.
 {¶ 58} The trial judge goes on to identify Plaintiff's allegations of material fact as to whether Defendants' acts and/or omissions were with wanton or reckless disregard, or bad faith. The Judgment of the trial court is succinct:
 {¶ 59} "Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED that Defendant Mary Jo Shannon Slick's Motion for Summary Judgment is OVERRULED and Defendant John Richard's Motion for Summary Judgment is likewise OVERRULED." Id.
 The Interlocutory Appeal {¶ 60} As an exception to the general rule that an appeal will not lie until the work of the trial court is concluded, and the trial court has had an opportunity to correct any *Page 14 
errors in the process, a unique legislative provision gives sued governmental agencies, and their employees, a preemptive strike at the legal integrity of a claim.
 {¶ 61} R.C. 2744.02, which governs governmental functions and proprietary functions of political subdivisions, provides:
 {¶ 62} "(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
 {¶ 63} "(2) The defenses and immunities conferred under this chapter apply in connection with all governmental and proprietary functions performed by a political subdivision and its employees, whether performed on behalf of that political subdivision or on behalf of another political subdivision.
 {¶ 64} "* * *
 {¶ 65} "(C) An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."
 {¶ 66} Here, Riggs postulates a number of circumstances he claims allow an inference of the requisite state of mind in each of the Appellants. Appellants claim they fail to raise any justifiable issue beyond a possible claim of negligence. *Page 15 
 {¶ 67} Riggs has been a teacher and a wrestling coach in the Perry Local School System for twenty years. There is no evidence of demerits in his service prior to the operative events leading to this litigation.
 {¶ 68} In August, 2005, Appellant Richards (Superintendant of Perry Local School District) received complaints about the financial management of the Perry Wrestling Booster Club. The investigation focused on the then head coach, Brian Dolph. The investigation was initiated by a father of one of the student wrestlers. It concerned the funneling of checks received by the booster club to camps and clinics operated as individual businesses by the coaches, which Richard believed might have violated both school board and Ohio High School Athletic Association rules.
 {¶ 69} On or about September 8, 2005, Richard procured from the custodian of the booster club records, Kathy Zollars, the records of the club, consisting of cancelled checks and other documents. The booster club had been using the school's tax identification and was not separately organized as a 501(c)(3) tax exempt organization.
 {¶ 70} On or about September 13, 2005, a meeting was convened by Richard at the Educational Service Center to which Riggs was summoned. Also present were an assistant superintendent and Appellant Slick. Immediately prior to the meeting Riggs was introduced to his lawyer. Neither were told in advance what the meeting was about. At this meeting Riggs was challenged, among other complaints, with misusing the funds of the booster club by writing three checks from its account to his stepson, Clint Musser, after Musser's employment with the school had been terminated. The existence of these three checks, and the circumstances surrounding this claim, and its truth or falsity, are lynchpins of the tort claims of the Plaintiff, Riggs. *Page 16 
 {¶ 71} Richard placed Riggs on administrative leave, effective September 14, 2005. He instructed Riggs in writing to stay off school property and not discuss the matter with students or anyone associated with Perry wrestling. This action was taken without any knowledge of, or action by, the school board.
 {¶ 72} The Canton Repository printed an article reporting the leave, the banishment from the school, and the prohibition against contacting students. Readers were left to speculate as to the rationale for the action.
 {¶ 73} On September 14, 2005, Slick requested Riggs' resignation. There is further evidence she advised him if he did not resign the school would continue to investigate him and seek to initiate criminal investigation. Whether Richard knew of this demand is disputed. The actions of Slick were taken without knowledge or consent of the Board of Education. Riggs was given a six day window to tender his resignation; he did not so do.
 {¶ 74} Richard claims he was not involved in the resignation issue, and testified he believed the action by Slick was improper. Richard Tr. 142-143.
 {¶ 75} Richard and Slick met with the school board on September 27, but the board was not advised as to the demand for resignation.
 {¶ 76} On September 27, 2005, Riggs, by counsel, requested copies of the financial records of the booster club. There was a delay until October 25 before Slick advised the records would be made available.
 {¶ 77} Richard was advised by the Stark County Prosecutor's office to turn the records over to the Perry Police Department. *Page 17 
 {¶ 78} On October 5, 2005, Slick and Richard met with members of the school board at a special meeting of the board. During the meeting there is evidence Slick held up copies of three checks purporting to be the three Musser checks. Board members have given testimony they were led to believe that the checks demonstrated criminal conduct by Riggs.
 {¶ 79} On that same day, October 5, 2005, Riggs was summoned to a meeting where he was confronted with allegations concerning the three Musser checks and ordered to reply. Riggs explained he could not respond until he had a chance to the see the checks — which Richard said he did not have. Public media were notified of the meeting, were present, but were not permitted to attend the meeting. After the meeting Richard issued a letter of reprimand (which had been drafted by Slick) to Riggs containing some nineteen areas of concern, one of which was the issuance of three checks to his stepson after the stepson had been terminated. The Canton Repository referenced the three check charge in its coverage.
 {¶ 80} In early October, Riggs became one of the candidates for head wrestling coach at the school. Around October 14, 2005, Richard advised the hiring committee the school board would never approve Riggs as head coach because of the three Musser checks; Riggs was forthwith eliminated from candidacy. Several days later, Richard advised Riggs that he would recommend him for the coaching job if Riggs would admit writing the checks and make restitution. Because Riggs had not seen the checks, and believed he had not written them, he refused. *Page 18 
 {¶ 81} There is additional evidence Richard withheld the alleged three checks from Riggs and from booster club citizens with whom he met notwithstanding numerous requests for production and his representations he would produce the checks.
 {¶ 82} On October 18, 2005, Richard met with the hiring committee which interviewed another candidate. No mention was made by Richard of the nonexistence of the three checks. That same day the Stark County Educational Service Center Superintendant, Larry Morgan, met with the booster club citizens and advised them the three Musser checks never existed. There is dispute about other actions at this meeting.
 {¶ 83} On October 19, 2005, Richard again met with the coach hiring committee and failed to disclose the Musser checks did not exist.
 {¶ 84} Only after a new coach had been hired and confirmed by the board of education did Richard disclose the checks never existed.
 {¶ 85} On October 21, 2005, Richard met with Riggs and for the first time advised him of the nonexistence of the three checks, and presented him with a revised disciplinary letter which did not reference the checks.
 {¶ 86} Richard did not publicly apologize for the false representations.
 {¶ 87} On October 25, 2005, the public was made aware of the nonexistence of the checks at a school board meeting. A new letter was placed in Riggs' personnel file containing other complaints. This letter became public and was referenced by the Canton Repository on November 3, 2005. Riggs denies the verity of these new and amended charges. *Page 19 
 {¶ 88} Appellants, Richard and Slick presented evidence on a number of fronts that suggest (1) Richard and Shannon Slick each and both acted in good faith and in performance of their respective duties and responsibilities, (2) their conduct was not conspirital in any tortuous sense, (3) the issue of the three Musser checks was but one of many malfeasance matter involving Riggs, (4) the error regarding the Musser checks was in good faith, and, at minimum, an act of negligence. All of these claims are part of the tapestry of evidence bearing upon the question of malice, bad faith, wanton or reckless conduct.
 {¶ 89} Determining what went on in a person's head, the mental state, intention, is one of the most difficult responsibilities encountered by any court. Disputes concerning operative, observable actions and events (ex: who had the red light at an intersection?) are considerably easier for summary judgment examination. Thoughts, motives, purposes are vested within the mind, and only determinable by expressions, conduct, actions of a person, and/or personal admissions.
 {¶ 90} Each of the numerous actions and inactions over the relevant period of time, standing alone, may not rise to the level of such malice, bad faith, or wanton, reckless conduct. However, when considered in concert and context, as they must be, they cumulatively create a genuinely disputed question of material fact, i.e. did Richard and Slick, either or both, act with malicious purpose or in such bad faith as to vitiate the statutory defense of government immunity?
 {¶ 91} It is our conclusion, upon all the circumstance and evidence tendered in support and opposition to summary judgment, at this preliminary stage in the litigation, there is sufficient evidence from which a jury could determine the acts of Richard and *Page 20 
Slick were malicious, executed in bad faith, or wanton or reckless. As such, summary judgment is inappropriate, and the matter is ripe for determination by a jury, consistent with appropriate rulings on the admissibility of evidence and instructions from the court.
 {¶ 92} Our independent review of the supplications upon summary judgment leads to the conclusion the Judgment of the Stark County Court of Common Pleas overruling the Motion for Summary Judgment was not erroneous; and the Interlocutory Judgment of the trial court ought to be affirmed.
 {¶ 93} Assignment of error I is overruled. The cause is remanded to the Stark County Court of Common Please for further proceedings according to law and our opinion.
Milligan, J., Hoffman, P.J. and Delaney, J concur.
Judge John R. Milligan, Ret., sitting by Assignment of the Supreme Court of Ohio. *Page 21 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is Affirmed and the cause remanded for further proceedings according to law. Costs assessed to appellant. *Page 1