[Cite as *Cannavino v. Rock Ohio Caesars Cleveland, L.L.C.*, 2017-Ohio-380.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.    103566

---

## ANDREW J. CANNAVINO

PLAINTIFF-APPELLEE

vs.

## ROCK OHIO CAESARS CLEVELAND, L.L.C., ET AL.

DEFENDANTS

[Appeal by Gregory Williams and Atlantis Security Company,
Defendants-Appellants]

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-817029

**BEFORE:**   Boyle, J., Jones, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   February 2, 2017

**ATTORNEY FOR APPELLANTS**

Thomas A. Skidmore
Thomas A. Skidmore Co. L.P.A.
One Cascade Plaza, 12th Floor
PNC Center Building
Akron, Ohio 44308


**ATTORNEYS FOR APPELLEES**

**For Andrew J. Cannavino**

George J. Argie
Dominic J. Vitantonio
Argie, D'Amico & Vitantonio
6449 Wilson Mills Road
Mayfield Village, Ohio 44143

**For Rock Ohio Caesars Cleveland, et al.**

Juan Jose Perez
Andrew D. Wachtman
Perez & Morris, L.L.C.
8000 Ravine's Edge Court, Suite 300
Columbus, Ohio   43235

MARY J. BOYLE, J.:

{¶1} Defendants-appellants, Gregory Williams and Atlantis Security Company, appeal the trial court's denial of their motion for summary judgment. Finding some merit to the appeal, we affirm the trial court's decision denying Williams's statutory immunity on plaintiff-appellee Andrew Cannavino's state law claims but reverse the trial court's decision denying summary judgment for Atlantis Security and Williams on Cannavino's federal Section 1983 claims.

## I. Procedural History and Facts

{¶2} This case arises out of an incident that occurred at the Horseshoe Casino, a private facility owned by defendant Rock Ohio Caesars Cleveland, L.L.C., and located in downtown Cleveland.[1] The casino is encompassed in the former Higbee's department store building adjacent to the Tower City Center shopping mall; the building is privately owned. Patrons of the casino could be asked for identification under varying circumstances, e.g., if a patron appeared to be intoxicated or was not gaming appropriately. Onsite security personnel included in-uniform but off-duty police officers, Ohio Gaming Commission agents, and private security.

{¶3} Cannavino was a regular patron of the casino. In June 2013, a casino cashier mistakenly overpaid Cannavino $2,700 during a cash-out. A day or two after the overpayment, a casino representative called Cannavino and left him a voicemail message

---

[1]Horseshoe Casino is now known as Jack Casino and is owned by Jack Entertainment, L.L.C., which is not a party to this appeal.

informing him of the overpayment and requesting that he return the money. The casino contacted Cannavino a second time and told him that the overpayment had been captured on surveillance video. Cannavino asked that someone "higher up" from the casino contact him. A third casino representative contacted Cannavino, confirmed the overpayment, and further indicated that if he did not return the money, he could be banned from the casino.

{¶4} Cannavino contacted his casino liaison, Randy Spencer, who also confirmed the overpayment. Cannavino told Spencer he did not think he had been overpaid and even if he had been overpaid, he "probably" would not pay the money back. Cannavino admitted to Spencer that someone from the casino told him he could be banned from the casino if he did not repay the money.

{¶5} Cannavino continued to patronize the casino; he played there approximately three to five times from June through October 2013. During that time, Cannavino did not use his casino-issued Total Rewards Card, thinking the casino might keep any winnings the card recorded. He also "assumed" that if he returned to the casino, he would be stopped and questioned about the overpayment.

{¶6} On the evening of October 26, 2013, prior to going to the casino, Cannavino patronized a few bars in downtown Cleveland and consumed "a couple" of drinks. He went to the casino alone and gambled for approximately an hour before a casino employee recognized him at the craps table. The casino dispatched its security supervisor, Mark Leisure, to identify Cannavino.

{¶7} Williams, a Cleveland police officer who was wearing his city-issued police uniform, was located in his normal position in the immediate area around the craps tables. At the time, Williams was a full-time police officer for the city of Cleveland but was off-duty and working a second job for Atlantis Security.

{¶8} Leisure, who had never met Cannavino, arrived on the floor and spoke to a casino employee. The employee told Leisure that he thought Cannavino was banned from the casino because he had not repaid a large overpayment. According to Leisure, he was going to approach Cannavino to confirm his identity and remove him from the casino. Leisure approached Cannavino and asked him who he was. Cannavino responded, "F*** you. You know who I am." Cannavino began gathering up his chips and attempted to walk away. As Williams came to the right side of Leisure, Leisure stated: "Well, perhaps you can show an ID to this gentleman. Maybe you can show an ID to this guy."

{¶9} Williams recalled Cannavino saying to him, "What the f*** do you want?" and "Get away from me." Leisure recalled Cannavino saying to Williams: "F*** you. You know who I am." Cannavino testified that he could not "remember" if he said anything to Leisure or Williams. Leisure stated that Cannavino became "verbally aggressive" and "extremely defensive" toward Williams.

{¶10} Williams placed his hand on Cannavino's arm and asked for identification. Cannavino told Williams, "f*** you, arrest me." Williams testified that it was at this point that he determined that Cannavino was being disorderly, but he did not inform

Cannavino that he was under arrest at that time. Cannavino claimed Williams was just "playing games" by asking for his identification so he "started playing games back." He testified that he refused to provide his name to Williams, because he "[d]idn't think you had to supply a name to anybody in this world."

{¶11} According to Cannavino, Leisure approached him while he was playing craps and asked for his name. Cannavino asked why he needed it and Leisure gestured to Williams and said to Cannavino, "That gentleman over there would like to talk to you." When Cannavino told the officer that he had lost his driver's license, the officer took his arm and said, "You're coming with me."

{¶12} Williams admitted he told Cannavino to come with him off the playing floor. Williams testified that he wanted to remove Cannavino from the gaming area to protect his safety and the safety of other patrons due to Cannavino's aggressive behavior and crude language. According to Williams, in response to his request, Cannavino raised his arms, pulled away, and told Williams he was not coming with him.

{¶13} Williams took Cannavino off the playing floor and escorted him to the casino's detention room of its security office, followed by several casino representatives, including Leisure. Once inside the detention room, Williams allowed Cannavino to use his own cell phone to call a personal friend, who he claimed was the deputy chief of police for the Cleveland Police Department. Cannavino was unable to reach the person. Following the call, Williams asked Cannavino for some identification, to which Cannavino indicated that he had none. At that point, Williams handcuffed Cannavino

and told him for the first time that he was arresting him for disorderly conduct.

{¶14} While Cannavino was under Williams's custody in the detention room, Leisure and other casino employees interacted with Cannavino. Cannavino repeatedly asked for an attorney and became increasingly belligerent toward casino staff and police, including threatening to file lawsuits against the police and casino. At one point, after Leisure told Cannavino that he had previously been banned from the casino, Cannavino asked "what do you want from me," and Leisure replied: "We want the twenty-seven hundred that you were overpaid on June 9, 2013." Leisure also inquired as to how much money Cannavino had, which he later testified that he did not know why he asked this question. Shortly thereafter, another casino employee entered the detention room and counted Cannavino's money. According to Leisure, he had "no idea" why a casino employee counted the money and not the police. Williams testified that casino personnel counted Cannavino's money and casino chips (while Cannavino was handcuffed) and indicated that this was not for police purposes.

{¶15} Cleveland police officer Matos, who was also present in the security room during Cannavino's detainment, responded to Cannavino's inquiry as to what the police were going to do with him, stating the following: "We're waiting to see what gaming is gonna do with you, whether you're going to jail, or they're gonna take your money, or what they're gonna do * * * we have nothing to do with this * * * this is between you and the casino."

{¶16} Eventually, Williams was able to verify Cannavino's identification, issued

him a citation for disorderly conduct, and released him.

{¶17} As reflected in the videotape recording of the casino's security room, Williams was extremely patient and polite during his encounter with Cannavino. Despite Cannavino's escalating belligerent language in the security room, Williams maintained a professional demeanor and attitude.

{¶18} Cannavino pleaded no contest to disorderly conduct in Cleveland Municipal Court and the parties stipulated facts to the court. After considering the evidence, the court found Cannavino not guilty of the charge.

{¶19} Cannavino subsequently filed suit against multiple defendants, including Williams and his employer, Atlantis Security Company, setting forth the following claims against all defendants: assault, battery, false imprisonment, malicious prosecution, civil conspiracy, intentional infliction of emotional distress, and violation of 42 U.S.C. 1983.

{¶20} Williams and Atlantis Security moved for summary judgment on multiple grounds, including immunity, which the trial court denied without opinion, in its entirety. Williams and Atlantis Security now appeal from the denial of immunity, raising the following three assignments of error:

> I. The lower court erred as a matter of law when it denied the defendant, Officer Gregory Williams['s] motion for summary judgment as he is personally immune from liability under O.R.C. Sec. 2744.
>
> II. The lower court erred as a matter of law when it denied the defendant, Officer Gregory Williams['s] and Atlantis Security Company's motion for summary judgment pertaining to all claims involving those under 42 U.S.C. Sec. 1983.
>
> III. The lower court erred as a matter of law when it denied the defendant,

Atlantis Security Company's motion for summary judgment as to the plaintiff, Andrew J. Cannavino's claims under 42 U.S.C. Sec. 1983 as it is a private-entity not subject to such claims.

## II.   Law and Analysis

### A.   Standard of Review

**{¶21}** An appellate court reviews a trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). De novo review means that this court "uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980). In other words, we review the trial court's decision without according the trial court any deference. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

**{¶22}** Under Civ.R. 56(C), summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1976). If the moving party fails to satisfy its initial burden, "the motion for summary judgment must be denied." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264

(1996). But if the moving party satisfies "its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

### B. Statutory Immunity

{¶23} In the first assignment of error, Williams argues that the trial court erred in denying his motion for summary judgment because he is personally immune from liability.

{¶24} On the day of the incident, Williams was working a secondary job at the casino for Atlantis Security and wearing his full police uniform. Even though Williams was not on duty with the city of Cleveland at the time he detained Cannavino, he still, by statute, had the authority to make arrests. Police officers have arrest powers regardless of whether they are working regular duty, special duty, or are off duty. *Ingles v. W. Pancake House*, 10th Dist. Franklin No. 77AP-643, 1977 Ohio App. LEXIS 7507, *7 (Dec. 27, 1977). Thus, a police officer who is working special duty is still performing a government function. *Id.,* citing *Wooster v. Arbenz,* 116 Ohio St. 281, 284-285, 156 N.E. 210 (1927); *see also Cooper v. Tommy's*, 10th Dist. Franklin No. 09AP-1078, 2010-Ohio-2978, ¶ 8 (recognizing that a police officer working special duty was performing "a governmental function" and working in a governmental or official capacity).

{¶25} In Ohio, a "'police officer * * * cannot be held personally liable for acts

committed while carrying out his or her official duties unless one of the exceptions to immunity is established.'" *Hunt v. Cleveland*, 8th Dist. Cuyahoga No. 103468, 2016-Ohio-3176, ¶ 25, quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80, 658 N.E.2d 814 (1st Dist.1995); R.C. 2744.03. In this regard, R.C. 2744.06(A)(6) provides that

> an employee is immune from liability unless (1) the employee acted outside the scope of his or her employment or official responsibilities, (2) the employee acted with malicious purpose, in bad faith, wantonly, or recklessly, or (3) the Revised Code expressly imposes liability on the employee.

*Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009-Ohio-6931, 924 N.E.2d 401, ¶ 21 (9th Dist.), citing R.C. 2744.03(A)(6)(a)-(c).

{¶26} As a general matter, whether an employee is entitled to R.C. 2744.03(A)(6) immunity is ordinarily a question of law. *Long v. Hanging Rock*, 4th Dist. Lawrence No. 09CA30, 2011-Ohio-5137, ¶ 17, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992); *Mathews v. Waverly*, 4th Dist. Pike No. 08CA787, 2010-Ohio-347, ¶ 14. However, "whether an individual acted manifestly outside the scope of employment," and whether the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner generally are questions of fact. *Long* at *id.*, citing *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573; *Fabrey v. McDonald Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994).

{¶27} According to Williams, the only exception to immunity at issue is whether he acted with malicious purpose, in bad faith, wantonly, or recklessly, which he contends the record overwhelmingly belies such a claim. Williams's argument on appeal therefore focuses solely on the exception set forth in R.C. 2744.03(A)(6)(b). Cannavino,

however, contends that genuine issues of material fact exist as to whether Williams was acting outside the scope of his employment (an exception contained in R.C. 2744.03(A)(6)(a)) *and* whether he acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Based on the record before us, we cannot say that the trial court erred in finding that genuine issues of material fact preclude the grant of immunity on this question in this case.

### 1. Outside Scope of Employment Exception

{¶28} R.C. Chapter 2744 does not define the type of employee acts that fall "manifestly outside the scope of employment or official responsibilities" under R.C. 2744.03(A)(6)(a). *Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010 and CA2009-08-012, 2010-Ohio-3368, ¶ 30. Ohio courts, however, have generally drawn from agency-law principles to hold that "conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business." *Jackson v. McDonald*, 144 Ohio App.3d 301, 307, 760 N.E.2d 24 (5th Dist.2001); *Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir.2007). "In the context of immunity, '[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment.'" *Jackson* at 307. "It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment." *Id.*

### 2. Bad Faith

**{¶29}** "Bad faith" implies sinister motive that has "no reasonable justification." *Hicks v. Leffler*, 119 Ohio App.3d 424, 429, 695 N.E.2d 777 (10th Dist.1997). "Bad faith" embraces more than bad judgment or negligence. *Id.*, citing *Parker v. Dayton Metro. Hous. Auth.*, 2d Dist. Montgomery No. 15556, 1996 Ohio App. LEXIS 2556 (May 31, 1996). It imports a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Id.*; *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 454, 602 N.E.2d 363 (12th Dist.1991).

### 3. Application of the Exceptions to Statutory Immunity

**{¶30}** The thrust of Cannavino's action against Williams is that the arrest was merely a ruse to attempt to collect an overpayment owed to the casino. Construing the evidence in a light most favorably to Cannavino, which we are required to do, genuine issues of material fact exist as to whether Williams acted outside the scope of his employment and/or in bad faith.

**{¶31}** Despite Williams's testimony that he intended to charge Cannavino with disorderly conduct as a result of Cannavino's belligerent response on the casino floor, Williams did not cite Cannavino with any offense immediately upon exiting him from the floor. Instead, he escorted him to the security office where Leisure ultimately requested payment. Notably, Williams did not limit Leisure's or other casino employees' communication or interaction with Cannavino while Cannavino was under his custody

and being detained. Aside from our doubt as to whether Cannavino's conduct even supported a disorderly conduct charge, the timing, location, and circumstances surrounding Cannavino's detention, handcuffing, and the issuance of the citation raises a genuine issue of material fact as to whether Williams was acting in concert with Leisure to collect on the overpayment. Reasonable jurors may reach differing conclusions as to this issue. Under such circumstances, Williams is not entitled to summary judgment on the basis of statutory immunity regarding Cannavino's state law claims.

{¶32} The first assignment of error is overruled.

**C.   Section 1983 Claims**

{¶33} In the second and third assignments of error, Williams and Atlantis Security argue that the trial court erred in denying their motion for summary judgment as to Cannavino's claims asserted under 42 U.S.C. 1983 for alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights. Williams contends that he is shielded from such claims under qualified immunity. Atlantis Security argues that Cannavino's purported Section 1983 claim cannot stand because it is a private entity.

{¶34} Section 1983 provides a civil remedy to persons whose federal rights have been violated by governmental officials. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), citing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds*, *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish such a claim, two elements are required: (1) the conduct in controversy must be committed by a person

acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt* at *id.*

### 1. *Qualified Immunity*

**{¶35}** Public officials, including police officers and deputy sheriffs, who perform discretionary functions are shielded from liability for civil damages in a Section 1983 action by qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The test is one of "objective reasonableness" that requires a "reasonably competent public official [to] know the law governing his conduct."

**{¶36}** The plaintiff bears the burden of showing that government officials are not entitled to qualified immunity. *Untalan v. Lorain*, 430 F.3d 312, 314 (6th Cir.2005). If the plaintiff fails to demonstrate that a constitutional right was violated or that the right was clearly established, he or she will have failed to carry her burden. *Summerville v. Forest Park*, 195 Ohio App.3d 13, 2011-Ohio-3457, 958 N.E.2d 626, ¶ 18 (1st Dist.), citing *Chappell v. Cleveland*, 585 F.3d 901, 907 (6th Cir.2009).

**{¶37}** Cannavino alleged that Williams and Atlantis Security violated: (1) his right to be free from unreasonable search and seizures; (2) his right to not be deprived of liberty without due process of law; (3) his right to be free from excessive use of force by persons acting under color of state law; and (4) his right to be free from false arrest.

Despite raising these claims, Cannavino failed to address these rights in his response to the defendants' motion for summary judgment. On appeal, Cannavino likewise focuses solely on arguments as to why statutory immunity should not apply but fails to address federal qualified immunity. Because Cannavino failed to carry his burden in the proceedings below to demonstrate that a constitutional right was violated or that the right was clearly established, we find that the trial court erred in denying Williams's motion for summary judgment on Cannavino's Section 1983 claim.

### 2. *Private Entity*

**{¶38}** We likewise find that the trial court erred in denying Atlantis Security's motion for summary judgment as to Cannavino's alleged Section 1983 claim. Because Cannavino failed to carry his burden to overcome Williams's qualified immunity and establish the deprivation of a federally protected constitutional right or statutory right, it likewise follows that Atlantis Security cannot be liable under a failure to train theory. Moreover, even if Cannavino had demonstrated that Williams violated his constitutional rights, he failed to establish that the actions of Atlantis Security — a private entity — are attributable to the state to impose liability under Section 1983. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *see also Collyer v. Darling*, 98 F.3d 211, 231-232 (6th Cir.1996).

**{¶39}** The second and third assignments of error are sustained.

**{¶40}** Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellee and appellants share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
LARRY A. JONES, SR., P.J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

LARRY A. JONES, SR., P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶41} I concur in part and dissent in part. I concur with the majority that the second and third assignments of error should be sustained but would also find that the trial court erred when it denied statutory immunity to Officer Williams and sustain the first assignment of error.

{¶42} The majority found that genuine issues of material fact existed as to whether Williams acted outside the scope of his employment and/or in bad faith in his handling of Cannavino. I disagree. As the majority notes, Williams was working in full uniform, off duty, and was standing on the casino floor where he usually stood while working, near the craps tables. He assisted Leisure with Cannavino, but there was no evidence presented that he "conspired," as Cannavino claimed, with Leisure to collect the overpayment. Instead, Williams was working security at the casino and, as he testified,

he was "there to enforce, to handle criminal activities that [go] on," and he considered his duties at the casino to be the equivalent to that of an on-duty police officer on patrol for the Cleveland Police Department.

{¶43} It is undisputed that Williams told Cannavino to leave the playing floor. Williams testified that he wanted to remove Cannavino from the gaming area to protect his safety and the safety of other patrons due to the man's aggressive behavior and crude language. According to Williams, in response to his request, Cannavino raised his arms, pulled away, and told the officer he was not going with him.

{¶44} Two plain-clothes gaming enforcement agents with the Ohio Casino Control Commission witnessed the incident. These agents also patrolled the casino and had full arrest authority. Agent Brian O'Connell recalled: "I observed [Cannavino] being very loud, yelling, swearing, causing alarm to the employees of the casino and confronting the [Cleveland Police] officer by turning toward him in an abusive manner." He thought Williams showed a great deal of restraint in dealing with Cannavino and that he himself "definitely" would have cited Cannavino with disorderly conduct based on Cannavino's "mannerisms and actions."

{¶45} It does not raise a genuine issue of material fact that Williams did not immediately tell Cannavino he was going to cite him with disorderly conduct. Williams testified that from the time he placed his hands on Cannavino, Cannavino "was not free to leave," was "in police custody," and Williams intended to charge him with disorderly conduct. Nor was an issue of fact raised because Williams did not handcuff Cannavino

until he was in the holding room. If Williams had handcuffed and issued the citation to Cannavino on the playing floor, it would have escalated an already tense situation. While in the holding room, Cannavino continued to violently curse and refer to people in vulgar terms while sitting in the holding room, even going so far as to try to get a casino employee to punch him (so, according to Cannavino, he could sue the casino for more money), that Williams decided to place him in handcuffs.

{¶46} As the majority notes, in order for Williams's conduct to fall outside the scope of the employment exception, his acts would have to have been motivated by actual malice or other situations giving rise to punitive damages. For the officer's conduct to be in bad faith, he would have to have had a sinister motive, not just bad judgment or negligence. It was Cannavino's own actions in refusing to show his identification, using vulgar language, and attempting to leave rather than answer Leisure and Williams's questions that gave the officer probable cause to cite Cannavino with disorderly conduct.

{¶47} There is simply no genuine issue of material fact that Officer Williams acted within the scope of his employment and with good faith in detaining and citing Cannavino. Therefore, I would find that the trial court erred when it denied statutory immunity and sustain the first assignment of error.